**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALIGNMENT HEALTHCARE, INC., et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., <br><br> *Defendants*. | Civil Action No. 1:26-cv-02441-CRC |

**PLAINTIFFS' MOTION FOR EXPEDITED STATUS CONFERENCE AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

Plaintiffs Alignment Healthcare, Inc.; Alignment Healthcare USA, LLC; Alignment Health Plan; and Alignment Health Plan of Arizona, Inc. (collectively, "Alignment") respectfully request that the Court set an expedited status conference as soon as practicable to discuss the potential need for urgent resolution of this matter, including the possibility of preliminary injunction proceedings. In support of its motion, Alignment states as follows:

1. This case concerns a challenge to CMS's calculation of Alignment's 2026 Star Rating. Star Ratings determine billions of dollars payable by CMS to Medicare Advantage health insurance plans, including over $50 million here. *See Alignment Healthcare, Inc. v. HHS*, No. 1:25-cv-74-CRC, 2025 WL 1635371 (D.D.C. June 9, 2025) (Cooper, J.) (discussing Star Ratings). Greatly simplified, under the Medicare Advantage program, private insurers submit "bids" by the first Monday in June representing what payment the insurer will accept to cover a beneficiary in the coming year. 42 U.S.C. § 1395w–24(a)(1). Those "bids" are then compared to the "benchmark" set by CMS, which is the maximum CMS will pay to cover the same beneficiary. *See id.*; *see also Elevance Health, Inc. v. Becerra*, 736 F. Supp. 3d 1, 5-6 (D.D.C. 2024) (explaining

process in detail).  The difference between a plan's bid and the benchmark is returned to the plan as a "rebate."  *See* 42 U.S.C. § 1395w–24(b)(1)(C).  Plans with higher Star Ratings qualify for increased rebates, which can be worth tens of millions of dollars.  *Id.* § 1395w–24(b)(1)(C)(v).

2.      In late May of this year, Judge Wood of the United States District Court for the Southern District of Georgia identified fundamental flaws in the Star Ratings program in a detailed and carefully reasoned 70+ page opinion.  *Clover Ins. Co. v. HHS*, 2:25-CV-142, 2026 WL 148351, at *1 (S.D. Ga. May 27, 2026).  But, rather than apply the whole judgment as to all plans, as would have been consistent with CMS's historical practice, on June 17, 2026, CMS announced that it had recalculated plans' 2026 Star Ratings in accordance with *only* part of the holding in *Clover*.  CMS, *Update to 2027 Quality Bonus Payment Determinations* (June 17, 2026) ("Recalculation Memo"), **Exhibit 1**.  CMS invited plans whose Star Ratings increased as a result of the recalculation to submit new bids for plan year 2027 by June 29, 2026.  *Id.*

3.      Shortly after learning of CMS's intention not to apply the whole *Clover* judgment to all plans, Alignment filed the instant suit seeking to have its own 2026 Star Rating calculated in accordance with the part of the holding in *Clover* that CMS refused to apply to other plans.  *See* Compl. (July 10, 2026), ECF No. 1.

4.      As previewed in its Complaint, Alignment recognized a need to discuss the timing for a decision with CMS, and committed to expeditiously meeting and conferring with CMS regarding the most efficacious path to resolve this matter.  *Id.* at ¶ 38.

5.      Alignment requests this conference because, despite Alignment's attempts to meet and confer, CMS refuses to take a coherent and consistent position about its ability to effectuate complete relief consistent with a Court order issued on a non-expedited timeline.  Here's the history:

6.    In a series of successful Star Ratings challenges decided in 2024 in this Court, CMS took the position that a decision on any judicial challenge to a plan's Star Rating is best resolved in advance of the annual June Medicare Advantage bidding deadline (for that year, June 3, 2024), because the Star Rating often interacts with the plan's bid to provide services in the Medicare Advantage system, which in turn determines quality bonus payments and rebates (among other benefits) to the plan.[1]

7.    In response to those decisions setting aside individual plans' Star Ratings, CMS recalculated the 2025 Star Ratings for *all* plans consistent with the holdings in those decisions, and allowed plans to submit revised bids notwithstanding the now-elapsed June 3, 2024 bidding deadline.  CMS, Update to 2025 Quality Bonus Payment Determinations (June 13, 2024), https://www.cms.gov/files/document/updateto2025qualitybonuspaymentdeterminations.pdf.

8.    More recently, Clover Insurance Company challenged the calculation of its 2026 Star Rating in the Southern District of Georgia, and sought an expedited decision before June 2026, *i.e.*, in late May.

9.    In *Clover*, CMS explicitly took the position that it is able to award efficient and efficacious relief after the bid deadline, even many months later, and there was thus no need for an expedited resolution.  *See, e.g.*, Reply In Supp. of Mot. To Stay at 3, *Clover Ins. Co. v. HHS*, No. 2:25-cv-142-LGW-BWC, (S.D. Ga. Apr. 29, 2026), ECF No. 31.

---

[1] *See, e.g.*, Joint Mot. for Briefing Schedule at 1, *SCAN Health Plan v. Dep't of Health & Human Servs.*, No. 1:23-cv-03910-CJN (D.D.C. Feb. 23, 2024), ECF No. 19 ("The parties have developed this scheduling proposal to allow for expedited summary judgment briefing in advance of the June 3, 2024 deadline for Medicare Advantage bids. . . ."); *Elevance Health, Inc. v. Becerra*, 736 F. Supp. 3d 1, 13 (D.D.C. 2024) (Moss, J.) ("Both parties have requested expedited consideration of . . . summary judgment in light of Plaintiffs' impending deadline to submit their bids to CMS for the upcoming contract year.").

10.     CMS argued that relief would be available many months later because "[n]umerous other district courts have decided Star Ratings cases after the end of May," (just before the early June bidding deadline) including decisions that issued in October and November, with "no obvious ill effects attributable to the issuance of a decision at that time." *Id.* at 3-4 (citing *Blue Cross & Blue Shield of Massachusetts, Inc. v. Kennedy*, No. 1:25-cv-693, 2025 WL 3062827 (D.D.C. Nov. 3, 2025) and *Humana, Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. 4:25-cv-779, 2025 WL 2909960 (N.D. Tex. Oct. 14, 2025)).

11.     Judge Wood ultimately entered her judgment in *Clover* in advance of the June bid deadline.  As discussed, CMS responded to that judgment by partially applying it to all plans, allowing impacted plans to re-submit their bids by June 29, 2026.  *See* **Exhibit 1**.

12.     On July 1, 2026, another plan, Elevance Health Inc., filed suit in the Southern District of Georgia, and sought expedited relief by August 14, 2026, contending that any later decision would make it difficult for Elevance and potentially CMS to operationalize a judgment in Elevance's favor.  *See* Compl., *Elevance Health Inc., et al. v. HHS, et al.*, 2:26-cv-61 (July 1, 2026), ECF No. 1; Mot. for Prelim. Inj., *Elevance Health Inc., et al. v. HHS, et al.*, 2:26-cv-61 (July 7, 2026), ECF No. 7.

13.     As recently as July 10, 2026, CMS again emphasized that there is no "urgency" for that court to rule in *Elevance*, consistent with CMS's representations in *Clover* that CMS could provide relief much later.  Tr. of Telephonic Mediation Status Conf. at 15:8, 29:12-16, *Elevance Health Inc., et al. v. HHS, et al.*, 2:26-cv-61 (July 10, 2026).

14.     If the story ended there, there would be no need for a conference.  CMS has now clearly stated on the record in multiple cases that relief can be effectuated whenever judgment is

4

issued, and has repeatedly provided the opportunity for plans to re-bid where appropriate in accordance with judicial relief well past the June initial bid deadline.

15.    But on July 15, 2026, just days after claiming no "urgency" for a decision, CMS appears in *Elevance* to be taking a directly contrary and irreconcilable position.  In response to Elevance's motion to set a briefing schedule on its expedited motion, CMS stated as follows:

> Plaintiffs argue that their 2026 Star Ratings must be recalculated on or before August 14 or else the "window of opportunity" to submit new Medicare Advantage bids will close. Doc. 28, ¶ 3.  But that window has already closed.  It closed before Plaintiffs even filed suit.  As Plaintiffs acknowledge, federal law requires the submission of bids to Centers for Medicare and Medicaid Services ("CMS") by the first Monday in June.  *See* 42 U.S. Code § 1395w-24(a)(1)(A); 42 C.F.R. § 422.254(a)(1); Doc. 7 at 7.  The statute does not allow for resubmission of bids in late August.

> Response to Mot. for Briefing Sched., *Elevance Health Inc., et al. v. HHS, et al.*, 2:26-cv-61 (July 15, 2026), ECF No. 31.

16.    Even more puzzlingly, CMS faulted Elevance for not seeking expedited relief on the same timeline as *Clover*—the very case in which CMS represented to that same court that there was no urgency to issue a decision by the initial bid deadline because it could afford relief at a later time.  *See id.*

17.    Thus, on some days, CMS represents that effective judicial relief can be awarded at any time; on others, it has appeared to take the position that relief within the proximity of the initial early-June bidding deadline may be relevant.  CMS has never explained its facially inconsistent positions.[2]

---

[2] The *Elevance* Court appears to agree that CMS's flip-flopping is troubling or, at the very least, might support the grant of emergency relief, and set an expedited preliminary injunction briefing schedule culminating in a hearing on August 7, 2026.  Order Granting in Part Motion for Briefing Schedule, *Elevance Health Inc., et al. v. HHS, et al.*, 2:26-cv-61 (July 16, 2026), ECF No. 32.

18. At this point, the Court might justifiably wonder: Why is it being bothered with this scheduling issue that the parties should be able to easily work out during the meet and confer process required by Local Civil Rule 7(m)?

19. Unfortunately, Alignment has repeatedly sought to meet and confer directly with CMS counsel about this issue, but unlike in Star Ratings cases of years past, CMS has been unwilling to substantively engage. While counsel at the Department of Justice ("DOJ") has been responsive to emails and participated in a call, agency counsel has refused to participate. Alignment even went so far as to draft an email for DOJ counsel to pass directly on to CMS (at DOJ counsel's request).

20. CMS would not answer directly. Instead, CMS provided only the following, through DOJ: "As CMS has stated repeatedly in *Clover* and elsewhere, it will comply with any final adverse judgment."

21. CMS's glib response dodges the actual question. If CMS means that it will comply with any final judgment, recalculate a plan's Star Rating, *and afford accordant rebate relief*, without the need for a re-bid (or can provide an opportunity to re-bid at any time), then there is no emergency.

22. If, however, CMS now contends that a re-bid *is* necessary to award full relief (i.e., increased rebates), and is now taking the position that constraints limit the time period in which a re-bid may be considered, *contra* CMS's position in *Clover* and its earlier representations in *Elevance* prior to July 15, then there may be an emergency to resolve this matter in the coming weeks before CMS fully operationalizes the existing bids.[3]

---

[3] Based on Alignment's understanding of CMS's internal process, there is still some period after bids have been submitted, but before they are "final," where it may be programmatically easier for CMS to permit changes. But, given CMS's unwillingness to confer on this process, Alignment

23.    Alignment's strong preference would be to avoid an unnecessary emergency and the associated burden on the Court and parties, and it has sought to confer with CMS to avoid one. Unfortunately, those efforts appear to have hit a brick wall.  In light of the ambiguity in CMS's position and shifting positions before the courts, and its unwillingness to substantively engage on the issue, Alignment respectfully requests a status conference to discuss the schedule for resolution of this matter, including whether any motion for preliminary injunctive relief may be necessary at this time.

24.    Pursuant to Local Civil Rule 7(m), Alignment conferred with counsel for CMS to obtain its position on appearing for an expedited status conference.  CMS stated:

> Defendants dispute Plaintiffs' assertion that CMS has "refuse[d] to take a coherent and consistent position about its ability to effectuate complete relief consistent with a Court order issued on a non-expedited timeline."  ¶ 5.  As Defendants previously related to Plaintiffs, and have stated repeatedly and consistently in Clover and elsewhere, they will comply with any final adverse judgment.  Plaintiffs offer no support for the extraordinary position that a defendant must explain in advance precisely how it will comply with a purely hypothetical adverse judgment.  If Plaintiffs believe they are entitled to preliminary relief, then they may so move.  In light of the foregoing, Defendants do not believe an expedited status conference is necessary, and oppose on that basis.

---

has no way of knowing whether there is, in fact, a need to seek expedited relief from CMS's perspective.

Dated:  July 23, 2026

Respectfully submitted,

/s/ Andrew D. Prins
Andrew D. Prins (D.C. Bar No. 998490)
Rachael L. Westmoreland (D.C. Bar No. 90034032)
Dorothy M. Canevari (D.C. Bar No. 90043751)
Halle H. Edwards (D.C. Bar No. 1780113)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: andrew.prins@lw.com
        rachael.westmoreland@lw.com
        dolly.canevari@lw.com
        halle.edwards@lw.com

Nicholas L. Schlossman (D.C. Bar No. 1029362)
LATHAM & WATKINS LLP
300 Colorado Street, Suite 2400
Austin, TX 78701
Tel: (737) 910-7300
Fax: (737) 910-7301
Email: nicholas.schlossman@lw.com


*Attorneys for Plaintiffs Alignment Healthcare, Inc.; Alignment Healthcare USA, LLC; Alignment Health Plan; and Alignment Health Plan of Arizona, Inc.*

8